UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TAUNYA V. JOHNSON,**<br><br>Plaintiff,<br><br>v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No. 13-1445 (JDB) |

### MEMORANDUM OPINION

The District of Columbia has moved to dismiss plaintiff Taunya Johnson's First Amended Complaint alleging a Title VII race discrimination claim. Johnson opposes that motion and, alternatively, requests leave to amend her complaint a second time in order to include additional factual allegations. The District asserts that leave to amend should be denied because the proposed amendments pose an undue delay to the litigation and are futile. The Court finds both of these arguments unavailing. Accordingly, Johnson's motion for leave to file a second amended complaint will be granted, and the District's motion to dismiss will be denied as moot.

### BACKGROUND

Johnson was an employee of the District of Columbia Metropolitan Police Department from 2002 until her termination in 2011. First Am. Compl. [ECF No. 13] ¶¶ 1, 12, 15. Before her termination, she was ordered to appear before an MPD panel in light of allegations that she had made false statements. Id. ¶ 13. The MPD panel determined that she had in fact made these false statements, and recommended to the Chief of Police that she be terminated—a recommendation that the Chief of Police accepted. Id. ¶¶ 14, 15. Johnson was accordingly fired on or around March

25, 2011, id. ¶ 15.  In response, Johnson sought administrative relief from the Equal Employment Opportunity Commission, but the agency dismissed her claim on June 24, 2013.  Id. ¶ 8.

Approximately three months later, Johnson filed a complaint with this Court, bringing various hostile work environment and employment discrimination claims, including a Title VII claim.  The District moved to dismiss all of the claims—except for her Title VII employment discrimination claim—and the Court granted the District's motion in its entirety.  With leave of the Court, Johnson filed her First Amended Complaint several weeks later, focusing on the Title VII claim alone.  See First Am. Compl.  The District has now moved to dismiss that complaint.  See Def.'s Mot. [ECF No. 16].  Johnson opposed the District's motion, arguing that her First Amended Complaint was sufficient to state a Title VII claim.  See Pl.'s Opp. [ECF No. 18].  But, in the alternative, she also requested leave to amend her complaint a second time in order to supplement its factual allegations.  Id. at 11.  Johnson attached a proposed Second Amended Complaint—including some more robust allegations—to her opposition.  See Proposed Second Am. Compl. [ECF No. 18-2].  The first new allegation is that "[f]rom 2008 to 2011, five White similarly situated members were charge [sic] with and found guilty of making untrue statements.  None of those White members were terminated."  Id. ¶ 17.  Johnson also alleges that:

> [E]ach of the similarly situated DCMDP officers (White) who have committed and/or been charged with the same, similar or more egregious misconduct as Plaintiff and were not ordered before a Trial Board and/or terminated are believed to be nearly identical to Plaintiff in their facts and circumstances, including but not limited to having been subject to the same standards and have engaged in the same or similar conduct without any differentiating circumstances.

Id. ¶ 19.

The District filed a reply, in which it offered arguments in further support of its motion to dismiss the First Amended Complaint, and in opposition to Johnson's request for leave to file her proposed Second Amended Complaint.  See Def.'s Reply [ECF No. 19].  On the latter front, the

District argued that allowing a second amendment would be futile—because even the proposed Second Amended Complaint fails to state a claim—and represents undue delay. Id. at 3–5.

## LEGAL STANDARD

The Court will address the parties' respective arguments in the context of Johnson's motion for leave to file her proposed Second Amended Complaint, rather than the District's motion to dismiss the First Amended Complaint. See Driscoll v. George Washington Univ., 42 F. Supp. 3d 52, 57 (D.D.C. 2012) (stating that although a motion to dismiss both the plaintiff's first amended complaint and plaintiff's motion for leave to file a second amended complaint were before the court, the court would begin with the motion for leave to amend and address only the second amended complaint in that context).

Federal Rule of Civil Procedure 15(a), which governs the amendment of pleadings, provides that leave to file an amended complaint should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, although the decision to grant a motion to amend is within the district court's discretion, Walker v. Pharm. Research & Mfrs. of Am., 256 F.R.D. 234, 238 (D.D.C. 2009), it is an abuse of discretion for the court to deny leave without "provid[ing] a sufficiently compelling reason," Robinson v. Detroit News, Inc., 211 F. Supp. 2d 101, 113–14 (D.D.C. 2002). Such reasons may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, under Rule 15(a) the non-movant bears the burden of persuasion that a motion to amend should be denied. See Dove v. Wash. Metro. Area Transit Auth., 221 F.R.D. 246, 247 (D.D.C. 2004).

## ANALYSIS

The Court concludes that leave to amend should be granted. In the first place, amendment would not prejudice the District. "The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." Djourabchi v. Self, 240 F.R.D. 5, 13 (D.D.C. 2006); see also Heller v. District of Columbia, 290 F.R.D. 1, 5 (D.D.C. 2013) (quoting 6 Wright et al., Federal Practice & Procedure § 1487 (3d ed. 2015) ("[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." Courts may find prejudice where discovery has already begun, and "the amended complaint contains new complex and serious charges which would undoubtedly require additional discovery for the defendants to rebut." Dave v. District of Columbia, 811 F. Supp. 2d 111, 120 (D.D.C. 2011) (internal quotation marks and alterations omitted); see also Darbeau v. Progressive Tech. Fed. Sys., Inc., No. 06-1081, 2007 WL 744726, at *1 (D.D.C. Mar. 7, 2007) (finding that the defendant would not be prejudiced by plaintiff's proposed amendment, "[s]ince no discovery has been taken to date"). Amendment may also prejudice the defendant where it would "expand the allegations beyond the scope of the initial complaint." Dave, 811 F. Supp. 2d at 120 (internal quotation marks omitted).

None of that applies here. For one, discovery has not yet begun. Thus, Johnson's proposed amendments at "this early [stage] in the proceedings will not markedly change the course of the litigation." Norris v. Salazar, 746 F. Supp. 2d 1, 4 (D.D.C. 2010). Moreover, Johnson's proposed amendments do not represent an expansion of the original complaint. Instead, they consist only of two additional factual allegations pertaining to "similarly situated" white employees of the MPD. See Proposed Second Am. Compl. at ¶ 16. They are, in other words, "based on the same nucleus of facts set forth in the [First] Amended Complaint." Council on Am.-Islamic Relations

Action Network, Inc. v. Gaubatz, 891 F. Supp. 2d 13, 31 (D.D.C. 2012). If anything, these amendments serve to clarify Johnson's allegations of discriminatory treatment, as they provide detail on the number of white employees who allegedly committed "similar or more egregious conduct" without being called before the MPD panel or terminated. Id. at ¶¶ 17, 19. In fact, the District may be "benefited by the additional specificity [Johnson] provides in [her] proposed second amended complaint." Driscoll, 42 F. Supp. 3d at 57; see also Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz, 793 F. Supp. 2d 311, 326 (D.D.C. 2011) (finding that the plaintiff's proposed amendments would not cause the defendant any undue prejudice, because the proposed changes ultimately "benefit[ted] the . . . Defendants by providing them with greater notice of what Plaintiffs' claims [were] and the grounds upon which they rest[ed]"). Accordingly, because discovery has not yet taken place and Johnson's proposed amendments are squarely within the scope of her initial Title VII claim, the amendments will not unduly prejudice the District.

Viewed in this context, the District's argument that amendment would unduly delay the litigation is unpersuasive. See Clark v. Feder Semo & Bard, P.C., 560 F. Supp. 2d 1, 5 (D.D.C. 2008) ("[T]he contention of undue delay is less persuasive in light of the lack of any prejudice."). The length of litigation cannot, on its own, justify denying leave to amend. See Caribbean, 148 F.3d at 1084. Only slightly over two months elapsed between Johnson's First Amended Complaint and her request for leave to amend it. And a two-month delay, in the absence of any other factors indicating potential prejudice, is an insufficient reason to deny the plaintiff's request for leave to amend. See Nat'l Black Chamber of Commerce v. Busby, 795 F. Supp. 2d 1, 6 (D.D.C. 2011) ("Although approximately five months have elapsed since the plaintiff filed its first amended complaint, it is nonetheless unlikely that any undue prejudice will arise from amendment at this

5

early stage in the litigation."); see also Clay v. District of Columbia, No. 09–1612, 2010 WL 3894591, at *3 (D.D.C. Sept. 30, 2010) (allowing amendment despite a five-month delay).

The District also argues that Johnson's motion to amend should be denied because the amendments are futile. Def.'s Reply at 5.[1] But the District has not met its burden here. "An amendment is futile if the proposed claim would not survive a motion to dismiss." Smith v. Cafe Asia, 598 F. Supp. 2d 45, 48 (D.D.C. 2009) (internal quotation marks omitted). For practical purposes, review for futility is identical to that for a Rule 12(b)(6) motion to dismiss. Driscoll, 42 F. Supp. 3d at 57. When reviewing a Rule 12(b)(6) motion to dismiss, a "court must assume all the allegations in the complaint are true (even if doubtful in fact)" and "must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotation marks and citation omitted). A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but "detailed factual allegations" are not necessary. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Indeed, a plaintiff alleging a Title VII race discrimination claim "faces a relatively low hurdle at the motion to dismiss stage." Terveer v. Billington, 34 F. Supp. 3d 100, 116 (D.D.C. 2014) (internal quotation marks and citation omitted). A plaintiff need not plead the elements of a Title VII prima facie case, as it "is an evidentiary standard, not a pleading requirement." Howard v. Fenty, 580 F. Supp. 2d 86, 91 (D.D.C. 2008) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–11 (2002)). Rather, at this stage, a claim has sufficient "factual heft" when it includes two basic assertions: that the plaintiff suffered an adverse employment action, and that this was

---

[1] Although the Court's analysis is focused on the proposed Second Amended Complaint, because the District's arguments in support of its motion to dismiss the First Amended Complaint are applicable to Johnson's motion to amend, the Court will consider these arguments in its analysis.

because of the plaintiff's race.  See Plummer v. Safeway, Inc., 934 F. Supp. 2d 191, 196 (D.D.C. 2013); see also 42 U.S.C. § 2000e-2(a)(1).  Thus, when a pleading contains these two allegations, they are not deemed conclusory, but rather provide enough support to "nudge[ ] . . . claims across the line from conceivable to plausible."  Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007).  In Ghawanmeh v. Islamic Saudi Academy, for instance, the plaintiff's allegation that "[o]ther similarly situated teachers who also happen[ed] to be Saudi Arabian nationals were not so dismissed [while the plaintiff, a non-Saudi, was dismissed]," provided enough support to establish a Title VII claim.  672 F. Supp. 2d 3, 15–16 (D.D.C. 2009).

So, too, here Johnson has included factual, not conclusory, allegations in her proposed Second Amended Complaint.  She alleges that "she was ordered to face an administrative proceeding before a MPD panel . . . for allegedly making false statements," and that she was subsequently terminated.  Proposed Second Am. Compl. ¶¶ 13, 15.  She further contends that "five White similarly situated members were charge[d] with and found guilty of making untrue statements," but that "[n]one of those White members were terminated" despite "hav[ing] committed similar or more egregious misconduct."  Id. ¶¶ 17–18.

The District fails to show that these allegations fall short of the basic requirements for pleading a Title VII claim.  First, Johnson's termination constitutes an adverse employment action.  Saint-Jean v. District of Columbia, 844 F. Supp. 2d 16, 21 (D.D.C. 2012) ("Suspensions without pay and terminations clearly constitute adverse employment action.").  Additionally, her allegations that similarly situated white employees were not terminated may give rise to an inference that she experienced this adverse employment action due to her race.  See Bryant v. Pepco, 730 F. Supp. 2d 25, 30 (D.D.C. 2010) (finding that the plaintiff's complaint supported a plausible inference that he faced an adverse employment action because he was African American,

where he alleged "(1) that his duties were given to a white Lead, (2) that he was demoted because of his race, and (3) that white Leads were allowed to choose their own on-call assignments while African American Leads were not"). The District's argument that Johnson's proposed amendments are "conclusory allegations" is therefore misguided. Nor does Johnson's failure to provide "the names or circumstances of any of the false statements made by the White employees," Def.'s Reply at 4, render her Title VII claim deficient, see Ghawanmeh, 672 F. Supp. 2d at 15–16 (holding that even though the plaintiff, a non-Saudi Arabian national, failed to identify the names of the Saudi Arabian nationals who had allegedly not faced the same adverse employment decision that the plaintiff had, the plaintiff's Title VII claim nevertheless still withstood defendant's motion to dismiss because "the allegations g[a]ve notice to defendant that plaintiff [was] asserting that she was treated differently from Saudis"). As "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination," Kangethe v. District of Columbia, 953 F. Supp. 2d 194, 199 (D.D.C. 2013) (internal quotation marks and citation omitted), the degree of detail that the District argues Johnson's complaint should have included is not necessary here, Hajjar-Nejad, 873 F. Supp. 2d at 9. Rather, it may more properly be a subject for discovery. Stokes v. Cross, 327 F.3d 1210, 1216 (D.C. Cir. 2003) (citing Swierkiewicz, 534 U.S. at 512–13).

      The District also contends that Johnson has not satisfied this pleading standard because the complaint includes a non-discriminatory reason for her termination. Def.'s Reply at 3. It is true that, under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, a plaintiff must eventually show that an employer's offered reason for an adverse employment action was merely a pretext for discrimination. 411 U.S. 792, 802 (1973). "None of this, however, has to be accomplished in the complaint itself . . . . [A] complaint need not offer any evidence of

pretext." Winston v. Clough, 712 F. Supp. 2d 1, 10 (D.D.C. 2010) (internal quotation marks omitted). The District therefore bases its argument on a higher standard than that to which Johnson's pleading is held at the motion-to-dismiss stage. And because the District has failed to show that Johnson's complaint is deficient, her proposed amendments are not futile.[2]

## CONCLUSION

For the foregoing reasons, the Court will grant Johnson's motion to file her proposed Second Amended Complaint, and will deny as moot the District's motion to dismiss the First Amended Complaint. See Turner v. Kight, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot the defendants' motion to dismiss the original complaint on the basis that the amended complaint supersedes the original complaint). The Second Amended Complaint supersedes the First Amended Complaint, and now becomes the operative complaint. Nat'l City Mortg. Co. v. Navarro, 220 F.R.D. 102, 106 (D.D.C. 2004). A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 17, 2015

---

[2] Although, as the Court notes, the analyses for futility and a 12(b)(6) motion are essentially identical, Driscoll, 42 F. Supp. 3d at 57, the Court's determination regarding the former issue does not foreclose the District from filing a motion to dismiss Johnson's Second Amended Complaint.